United States District Court
Southern District of Texas
**ENTERED**
August 10, 2017
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BRADLEY JARED BARTON, | § | |
| TDCJ #1680744, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-0587 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Bradley Jared Barton seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction for capital murder, which resulted in a sentence of life without parole. The respondent has filed a motion for summary judgment, arguing that Barton's claims are without merit and that he is not entitled to relief [Doc. # 58]. Barton has filed multiple responses [Docs. # 65, # 66, # 67], in addition to briefing that he provided previously in this case [Doc. # 31], and he has also requested the appointment of counsel, discovery, and an evidentiary hearing [Docs. # 54, # 62]. After considering all of the pleadings and state court records, the Court will grant the respondent's motion for summary judgment and dismiss this case for the reasons set forth below.

## I.  **BACKGROUND**

The conviction at issue in this case stems from the aggravated robbery of a Wing Zone restaurant in Houston, Texas, on January 23, 2009, during which an employee (Miguel Figueroa) was shot to death by one of the perpetrators.[1] Investigation revealed that Lloyd McClain and Maurquice Cansler robbed the Wing Zone, but that Barton was the mastermind who planned and participated in the offense.[2]  After capital murder charges were lodged against all three men, State District Judge Shawna Reagin received a letter from Cansler, who admitted his participation in the Wing Zone robbery, identified McClain as the shooter, and expressed fear for his life, explaining that Barton had threatened to harm Cansler or his family if Cansler did not "keep [his] mouth shut and take the case[.]"[3] Cansler and McClain both pled guilty to the capital murder charges against them after identifying Barton as the individual who planned the robbery, provided the firearm that was used to shoot Figueroa, and participated by acting as the get-away driver.[4]

---

[1]     Indictment in *State v. Barton*, Cause No. #1206429 [Doc. # 13-9], at 17.

[2]     Statement of Person in Custody, Maurquice DeAngeles Cansler, March 2, 2009 [Doc. # 13-11], at 47-49.

[3]     Letter from Maurquice Cansler dated Nov. 4, 2009 [Doc. # 57-10], at 1-2.

[4]     Plea Documentation and Statement in *State v. McClain*, Cause No. 1200534 [Doc. # 57-8], at 38-40; Reporter's Record of Plea Hearing, Aug. 17, 2010, in *State v. Cansler*, Cause No. 1205777 [Doc. # 57-8], at 43-61.

A month before his trial was set to start in the capital murder case against him, Barton requested permission to represent himself for the remainder of his criminal proceeding.[5]  After a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), Barton waived the right to have the assistance of appointed counsel and was granted leave to proceed *pro se*.[6]

At a jury trial in the 176th District Court for Harris County, the State presented evidence that Barton had been employed for three days at the Wing Zone restaurant located on FM 1960 in northwest Houston, Texas, but that he was fired for poor performance shortly before the robbery occurred.[7]  Angry about being fired, Barton enlisted McClain and Cansler to rob the Wing Zone, providing them with a loaded Glock .45 caliber GAP semiautomatic handgun and instructing them to escape through the back door of the restaurant where Barton would be waiting for them in his car.[8]

Barton visited the Wing Zone twice on the night of January 23, 2009, to "check

---

[5]     *See* Court Reporter's Record, vol. 2 [Doc. # 14-14], at 3.

[6]     *See id.* at 3-17; *Faretta* Warnings, Waiver of Court Appointed Counsel, Court Findings and Order Allowing Defendant to Proceed Pro Se [Doc. # 13-12], at 84.

[7]     Court Reporter's Record, vol. 6 [Doc. # 14-18], at 33, 50-54; vol. 7 [Doc. # 14-19], at 183-98, 203-04; vol. 9 [Doc. # 14-21], at 140.

[8]     Court Reporter's Record, vol. 6 [Doc. # 14-18], at 164, 179-81; vol. 7 [Doc. # 14-19], at 160-63, 186-98; vol. 8 [Doc. #14-20], at 74, 77-79, 150-60, 165-75, 205-09.

out the place" under the guise of attempting to collect his pay check.[9]  Within minutes of Barton's second visit, McClain and Cansler entered the Wing Zone and proceeded to execute Barton's plan to rob the establishment at gun-point.[10]  During the robbery, which was captured on surveillance video, McClain shot and killed Figueroa using the handgun that Barton provided, which Barton had loaded with ammunition that he bought from a local gun range on the day of the robbery.[11]  The men split the money three ways, with McClain, Cansler, and  Barton each getting a share.[12]

The evidence against Barton was overwhelming.  McClain testified against Barton, describing Barton's involvement in planning and executing the aggravated robbery that resulted in Miguel Figueroa's death.[13]  Cansler did not testify, but his written confession, identifying Barton as the one who planned the robbery and participated in the offense, was read into the record.[14]  Barton's former girlfriend,

---

[9]     Court Reporter's Record, vol. 6 [Doc. # 14-18], at 55-59, 73; vol. 8 [Doc. # 14-20], at 169-70, 172.

[10]    Court Reporter's Record, vol. 6 [Doc. # 14-18], at 60-68, 73; vol. 8 [Doc. # 14-20], at 169-77, 216-17.

[11]    Court Reporter's Record, vol. 6 [Doc. # 14-18], at 60-68; vol. 7 [Doc. # 14-19], at 26-29, 147; vol. 8 [Doc. # 14-20], at 7-13, 66-67, 169-79.

[12]    Court Reporter's Record, vol. 8 [Doc. # 14-20], at 182-83.

[13]    Court Reporter's Record, vol. 8 [Doc. # 14-20], at 144-212.

[14]    Court Reporter's Record, vol. 7 [Doc. # 14-19], at 159-63; State's Ex. No. 110 [Doc.
(continued...)

Nahji Johnson, also testified against Barton as a State's witness.[15]  Johnson, who was in custody facing criminal charges in an unrelated case, testified that Barton admitted planning and participating in the robbery with McClain and Cansler.[16]  The lead investigator testified that Barton led them to the murder weapon shortly after his arrest.[17]  The State presented cell-phone records of calls between Barton and McClain along with photos posted by Barton to a social media website, which showed Barton throwing "gang signs" and brandishing the same firearm that was used to kill Figueroa.[18]  After hearing all of the evidence, the jury found Barton guilty as charged of capital murder.[19]  Because the State did not seek the death penalty, Barton was automatically sentenced to life without parole pursuant to § 12.31(a)(2) of the Texas Penal Code.[20]

On direct appeal, Barton argued that the trial court erred by excluding a

---

[14](...continued)
# 15-1], at 20-23.

[15]     Court Reporter's Record, vol. 8 [Doc. # 14-20], at 61-110.

[16]     *Id*. at 74, 78-80.

[17]     Court Reporter's Record, vol. 7 [Doc. # 14-19], at 21-23, 51-56.

[18]     Court Reporter's Record, vol. 9 [Doc. # 14-21], at 48-49, 69-76.

[19]     Verdict [Doc. # 13-14], at 58.

[20]     Judgment of Conviction by Jury [Doc. # 13-14], at 62.

witness's testimony about whether Barton, as a party to the offense, could have anticipated the shooting by his co-defendant (McClain).[21]   Barton argued further that his mandatory sentence of life without parole was unconstitutional.[22]   The court of appeals rejected Barton's arguments and affirmed the conviction in an unpublished opinion.  *See Barton v. State*, No. 14-10-01119-CR, 2011 WL 5846300 (Tex. App. — Houston [14th Dist.] Nov. 22, 2011).   Barton did not appeal further by pursuing discretionary review by the Texas Court of Criminal Appeals.

Barton now contends that he is entitled to federal habeas corpus relief from his conviction for the following reasons:

1.    The trial judge showed improper bias and undermined Barton's constitutional rights by admitting evidence of Barton's history of unadjudicated extraneous criminal activity over Barton's objections.

2.    The trial judge violated Barton's right to self-representation and his right to a fair trial by not allowing him to consult with or subpoena witnesses.

3.    Barton did not voluntarily and intelligently waive the right to counsel.

4.    The prosecutor engaged in misconduct by knowingly using perjured testimony and concealing a deal with one of the

---

[21]    Brief of Appellant [Doc. # 13-4], at 11.

[22]    *Id.*

6

State's chief witnesses (Nahji Jackson).[23]

In addition to these claims, Barton argues that he is entitled to relief because he is actually innocent of the charged offense.[24]  These claims were rejected by the Texas Court of Criminal Appeals on habeas corpus review without a written order based on detailed findings of fact made by a state district judge that differed from the one who presided over the trial.[25]  The respondent moves for summary judgment, arguing that Barton fails to show that the state court's adjudication was unreasonable or wrong and that he is not entitled to relief under the governing federal habeas corpus standard of review.[26]

## II.   HABEAS CORPUS STANDARD OF REVIEW

To the extent that Barton's claims were adjudicated on the merits in state court, the petition is subject to review under the Antiterrorism and Effective Death Penalty

---

[23]    Petition [Doc. # 1], at 3-6.

[24]    *Id.* at 6.

[25]    Action Taken on Writ No. 76,811-09 [Doc. # 57-3], at 1; Findings of Fact, Conclusions of Law and Order ("Findings and Conclusions") [Doc. # 57-10], at 8-22.

[26]    Motion for Summary Judgment [Doc. # 58].  Barton has filed a response to the summary judgment motion [Doc. # 66].  He has also filed a motion asking the Court to consider briefing submitted by him previously in this case [Doc. # 65] and a motion asking the Court to consider a supplemental response [Doc. # 67].  The Court has considered all of the pleadings submitted by Barton, including the entirety of the state court record [Docs. # 13, # 14, # 15, # 16, # 57].  To the extent that they are not moot, the above-referenced motions [Docs. # 65, # 67] will be granted.

Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d).  Under the AEDPA standard, a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).  "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted); *see also Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).  To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014)).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The AEDPA standard "imposes a 'highly deferential standard for evaluating

8

state-court rulings, . . . [which] 'demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)); *see also White*, 134 S. Ct. at 1702.

A state court's factual determinations are also entitled to deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. *See Garcia v. Quarterman*, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). Where a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A federal habeas corpus court "may not

characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "Instead, § 2254(d)(2) requires that [a federal court] accord the state [habeas corpus] court substantial deference." *Id*.

## III.   DISCUSSION

### A.   The Claim of Judicial Bias

Barton contends that the trial judge demonstrated actual bias against him and undermined his constitutional rights, resulting in structural error, by admitting evidence of unadjudicated extraneous offenses over Barton's "strenuous objections."[27] The state habeas corpus court rejected this claim after finding that Barton failed to demonstrate that structural error occurred as a result of judicial bias.[28]

The Fourteenth Amendment Due Process Clause requires a "fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (citations and internal quotation marks omitted); *see also Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) ("Stated succinctly, the cornerstone of the American judicial

---

[27]    Petition [Doc. # 1], at 3, 6.

[28]    Findings and Conclusions [Doc. # 57-10], at 19.

system is the right to a fair and impartial process.").  Actual bias must be personal, *see Bracy*, 520 U.S. at 909, and must stem from an "extrajudicial source."  *Liteky v. United States*, 510 U.S. 540, 544 (1994) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).  By contrast, judicial rulings and intemperate remarks, including those that are critical or disapproving of, or even hostile to, counsel and the parties, almost never constitute actual bias unless they display a "deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky*, 510 U.S. at 555.  If established, actual bias by the trial court is considered structural error that requires reversal.  *Richardson v. Quarterman*, 537 F.3d 466, 473 (5th Cir. 2008).

As evidence of the trial court's bias against him, Barton alleges that the trial judge "allowed" and "even encouraged" the prosecutor to present evidence of inadmissible extraneous offenses during the guilt/innocence phase of his proceeding.[29] Barton provides no facts in support of this allegation and no cites to the record.  A review of the state court record, which includes a complete copy of his trial transcript, refutes Barton's claim that evidence of his criminal activities was admitted improperly or with the trial court's encouragement.  The record shows that the trial court granted Barton's pretrial motion *in limine* regarding his criminal history and cautioned him more than once outside of the jury's presence about "opening the door" to evidence

---

[29]      Petition [Doc. # 1], at 6.

of his extraneous offenses by mentioning those incidents himself while questioning witnesses.[30]  Despite the trial court's efforts, Barton repeatedly opened the door that allowed the State to present evidence of his criminal record of adjudicated and unadjudicated offenses.[31]  To the extent that Barton faults the trial court for admitting this evidence, trial court rulings, standing alone, are not evidence of bias.[32]  *See Liteky*, 510 U.S. at 555.

As further evidence of bias, Barton presents an affidavit from his mother, Rosalind Yoder, who states that shortly after the trial ended she saw the trial judge hand one of the prosecutors a "tiara," saying "this is for the queen of evidence."[33]  It does not appear that Mrs. Yoder's affidavit was ever presented in state court or that Barton exhausted available state court remedies with respect to this assertion. Assuming that this incident actually occurred, the Court has read the entire trial

---

[30]     Motion in Limine [Doc. # 13-12], at 75-76; Motion to Prohibit State From Mentioning Any Extraneous Offenses or Acts of Misconduct [Doc. # 13-12], at 78-81; Court Reporter's Record, vol. 7 [Doc. # 14-19], at 113-14; Court Reporter's Record, vol. 8 [Doc. # 14-20], at 260-61; Court Reporter's Record, vol. 9 [Doc. # 14-21], at 45-26.

[31]     Court Reporter's Record, vol. 9 [Doc. # 14-21], at 45-46, 63-65, 92-95, 150-51.

[32]     To the extent that Barton also suggests that the trial court denied him stand-by counsel out of "spite," *see* [Doc. # 66], at 11, he does not show that this ruling violated his rights for reasons discussed further below and he does not otherwise establish that the ruling that he complains of constitutes evidence of actual bias.

[33]     Petitioner's Response [Doc. # 66], at 11; Affidavit of Rosalind Yoder [Doc. # 67], at 4.

transcript and there is no evidence that it occurred in front of the jury, which was discharged as soon as it rendered the guilty verdict.[34]  Moreover, the trial court's remark appears to have been made, if at all, in response to an attempt at humor by one of the prosecutors during trial.  In that regard, the record shows that Barton, as a *pro se* litigant, repeatedly relied on one of the prosecutors to assist him in presenting evidence in support of his defense, causing the prosecutor to remark at one point that she was not "the evidence princess."[35]  Viewed in this context, the trial court's remark is not evidence of favoritism for the prosecution or antagonism against Barton and it does not constitute actual bias in violation of the Due Process Clause.

Barton complains further that the trial court exhibited bias when it placed restrictions on his ability to send and receive mail, make phone calls, or have visitation privileges while he was in custody.[36]  The record shows that this ruling was made months after the trial ended and at the State's request after the lead prosecutor received a detailed letter from Barton, who was known to be a member of a criminal street gang, threatening her life.[37]  Barton fails to show that the ruling was improper

---

[34]     Court Reporter's Record, vol. 9 [Doc. # 14-21], at 186-87.

[35]     Court Reporter's Record, vol. 6 [Doc. # 14-18], at 172.

[36]     Petitioner's Response [Doc. # 66], at 12.

[37]     Motion to Restrict Privileges and Order [Doc. # 13-15], at 1-7.

or that it was the product of impermissible bias.

This Court's own review of the record reflects that it is replete with instances in which the trial court paused the proceedings to help Barton with his defense. Although there were times when Barton clearly tried the patience of both the trial court and the prosecutors, who were repeatedly called upon to help Barton present exhibits as well as to secure the presence of his witnesses, the record does not disclose any evidence of actual bias in the trial court's rulings or temperament.   More importantly, the Court's research has not revealed any clearly established Supreme Court precedent indicating that there was a violation of the Due Process Clause or structural error under the facts of this case.   Barton fails to otherwise show that the state habeas corpus court's decision to deny relief on his judicial bias claim was contrary to and or involved an unreasonable application of clearly established Supreme Court precedent.   Therefore, he is not entitled to relief on this issue.

### B.      The Right to Self-Representation and Compulsory Process

Barton contends that the trial judge interfered with his constitutional right to self-representation and his right to a fair trial by not allowing him to consult with or subpoena witnesses.[38]   The state habeas corpus court rejected this claim, finding that Barton failed to show that his right to compulsory process was violated because there

---

[38]      Petition [Doc. # 1], at 3-4.

was no evidence that he timely requested a subpoena for the witness he identified (John C. Eaglin) and no showing that this purported witness would have testified in a manner that was favorable for the defense.[39]

The right of an accused to have compulsory process for obtaining witnesses on his behalf is guaranteed by the Sixth Amendment and is considered "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). To establish a violation of the right to compulsory process, however, a defendant must establish that the witness was "physically and mentally capable of testifying to events that he had personally observed" and that the proposed testimony "would have been relevant and material to the defense." *Id.* at 23.

There is no evidence showing that Barton, who was represented by well-qualified counsel until one month before his trial commenced, was denied a subpoena to compel a witness's attendance at trial or that he was not allowed to consult with any particular witness in preparation of his defense. Likewise, Barton does not allege facts or provide a statement from any proposed witness showing that he was denied an opportunity to present relevant, material testimony in support of his defense. The Fifth Circuit has repeatedly emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012

---

[39]   Findings and Conclusions [Doc. # 57-10], at 19.

(5th Cir. 1983) (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)).  Barton's bare assertion that his right to self-representation was abridged because he was denied access to witnesses, without more, is not sufficient to establish error on the trial court's part or to state a claim for relief on federal habeas review. Because Barton has failed to articulate a valid claim, his request for relief on this issue must be denied.

### C.    The Right to Counsel and the Right to Proceed *Pro Se*

Barton contends that he was denied the right to counsel because he did not voluntarily and intelligently waive the right to counsel.[40]  Barton complains, in particular, that he did not knowingly waive the right to counsel when he elected to proceed *pro se* because he thought that the trial court would appoint stand-by counsel to assist him.[41]  The state habeas corpus court rejected this claim after finding that Barton voluntarily waived his right to counsel and elected to represent himself following a "*Faretta* hearing" before the trial court.[42]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S.

---

[40]    Petition [Doc. # 1], at 4-5.

[41]    *Id.*

[42]    Findings and Conclusions [Doc. # 57-10], at 13 (citing Reporter's Record of Hearing, Oct. 7, 2010, and *Faretta* Warnings and Findings in Cause No. 1206429).

CONST. amend VI.  Nevertheless, a criminal defendant has the constitutional right to waive his right to counsel and present his own defense pursuant to *Faretta v. California*, 422 U.S. 806 (1975).  Once a defendant unequivocally invokes the right of self-representation, the trial court must hold a hearing, known as a *Faretta* hearing, to ensure that his decision to waive the right to counsel is knowing and voluntary. *Id*. at 835-36.  Although there is no prescribed "formula or script to be read to a defendant who states that he elects to proceed without counsel," *Iowa v. Tovar*, 51 U.S. 77, 88 (2004), the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  In undertaking such an inquiry, the trial court may look at the facts and circumstances of the case, "including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding," to determine whether the defendant made a knowing and intelligent waiver of counsel. *Tovar*, 541 U.S. at 88.

Consistent with *Faretta*, the trial court held a hearing on October 7, 2010, after Barton's appointed counsel (Robert Morrow) advised the court at a pretrial conference

that Barton had decided to proceed *pro se* and represent himself at trial.[43] At that

hearing, the trial court inquired about Barton's age, education, and whether he

suffered from any sort of learning disability or mental impairment.[44]  The trial court

inquired at length about Barton's understanding of the charges, the punishment he was

facing, as well his knowledge of Texas criminal law and procedure.[45]  After allowing

Barton to confer with Morrow, who had done all of the trial preparation up to that

point with the assistance of another defense attorney (Amy Martin), Barton assured

the trial court that he that he wished to waive his right to court appointed counsel and

proceed *pro se*.[46]  Before accepting the waiver, the trial court warned Barton that he

had the right to represent himself or the right to counsel, but not the right to both, and

explained that it would not require Morrow to act as stand-by counsel because it could

potentially place Morrow in the position of having to defend against error that

occurred at trial after Barton "took away all of his authority to preserve it."[47]  After

these and other admonishments, Barton signed a written waiver of his right to counsel

---

[43]     Court Reporter's Record, vol. 2, Pre-Trial Conference Proceedings [Doc. # 14-14], at 3.

[44]     *Id.* at 3-4.

[45]     *Id.* at 4-15.

[46]     *Id.* at 15.

[47]     *Id.* at 8-9.

and proceeded to trial without a lawyer.[48]

Barton now claims that he unknowingly waived his right to counsel because he was unaware that he would not have access to stand-by counsel. Barton maintains that he wanted the right to be heard "by himself, by counsel, or both," and that the trial court erred by denying him that right.[49] As the trial court explained to him during the *Faretta* hearing, however, there is no right to what is known as "hybrid representation," in which a defendant is represented partly by himself and partly by counsel. Although a provision found in Article 1.05 of the Texas Code of Criminal Procedure purports to authorize a defendant's right to be heard "by himself, by counsel, or both," the Supreme Court has made clear that there is no constitutional right to hybrid representation.[50] *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) ("*Faretta* does not require a trial judge to permit 'hybrid' representation[.]"); *see also United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998) (explaining that "[a

---

[48]    *Id.* at 17; *see also* Faretta Warnings, Waiver of Court Appointed Counsel, Court Findings and Order Allowing Defendant to Proceed Pro Se [Doc. # 13-12], at 84-85.

[49]    Petitioner's Response [Doc. # 66], at 10 (emphasis in original) (citing Tex. Code Crim. Proc. art. 1.05 and *Faretta*, 422 U.S. at 806 n.10 (1975) (observing that some states provide an accused the right to defend either by himself, by counsel, or both")).

[50]    The Texas Court of Criminal Appeals has also held that "[t]here is no constitutional right in Texas to hybrid representation partially pro se and partially by counsel." *Landers v. State*, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977); *see also Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) (observing that "a defendant has no right to hybrid representation" under Texas law).

defendant's] right to choose *pro se* or attorney representation is 'disjunctive'; a defendant has a right to one or the other, but not a combination of the two"); *Neal v. State of Tex.*, 870 F.2d 312, 315-16 (5th Cir. 1989) ("A 'criminal defendant does not have the right . . . to a "hybrid representation," partly by counsel and partly by himself.'") (citation omitted).  Likewise, "[a] defendant proceeding *pro se* has no constitutional right to standby counsel." *United States v. Allison*, 264 F. App'x 450, 453, 2008 WL 302329, at *3 (5th Cir. 2008) (citing *McQueen v. Blackburn*, 755 F.2d 1714, 1178 (5th Cir. 1985)); *see also Mikolajczyk*, 137 F.3d at 246 (observing that the appointment of standby counsel is "not constitutionally required"); *Neal*, 870 F.2d at 316 (noting that standby counsel may be preferable, but "the appointment of standby counsel for a defendant proceed *pro se*, 'is not mandatory'") (citation omitted).

The record confirms that the trial court advised Barton before it accepted his waiver of the right to counsel that it would not appoint stand-by counsel in his case.[51] Thus, Barton does not demonstrate that his waiver of the right to counsel was unknowingly made.  More importantly, he does not establish that the state habeas corpus court's decision to reject this claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  Therefore,

---

[51]     Court Reporter's Record, vol. 2, Pre-Trial Conference Proceedings [Doc. # 14-14], at 8-9.

Barton is not entitled to relief on this claim.

### D. Prosecutorial Misconduct

Barton contends that the prosecution engaged in misconduct by knowingly using perjured testimony and concealing a deal with the state's chief witness.[52] Barton points, in particular, to testimony that he claims was coerced from his former girlfriend and the mother of his child, Nahji Jackson, who was the subject of a motion to adjudicate guilt and revoke the sentence of deferred adjudication community supervision (*i.e.*, a motion to revoke probation) that she had received in a separate case at the time she testified against Barton at his trial.[53] Although Jackson insisted during her testimony that she had "no" deal with the State, Barton notes that the charges against Jackson were dropped at a hearing held the day after Barton was convicted.[54] In addition, Barton presents an affidavit from Jackson, in which Jackson claims that the prosecutor threatened to revoke her probation and sentence here to four years in prison, causing her to lose custody of her four-month-old child if she did not testify.[55] The state habeas corpus court rejected Barton's claim of prosecutorial misconduct

---

[52]    Petition [Doc. # 1], at 5-6.

[53]    *Id.* at 5.

[54]    *Id.* at 5-6.

[55]    Affidavit of Non-Prosecution [Doc. # 57-5], at 71-72.

21

after finding that Jackson's affidavit was "not credible" and had "no evidentiary value," concluding further that Barton failed to establish that the State "presented or relied upon perjured testimony to secure his capital murder conviction."[56]

The Supreme Court has held that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction[.]" *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  In that respect, the prosecution denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. 150 (1972); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).  To demonstrate a constitutional violation in this context, a defendant must show that (1) the testimony was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993).

As an initial matter, the state habeas corpus court's finding that Jackson's affidavit was "not credible" is presumed correct for purposes of federal review.  *See* 28 U.S.C. § 2254(e)(1); *see also Kinsel v. Cain*, 647 F.3d 265, 270 (5th Cir. 2011) (noting that state court "credibility determinations in particular are entitled to a strong presumption of correctness" on federal habeas review); *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis

---

[56]    Findings and Conclusions [Doc. # 57-10], at 16, 19.

of conflicting evidence are entitled to a strong presumption of correctness and are

'virtually unreviewable' by the federal courts.'") (quoting *Moore v. Johnson*, 194 F.3d

586, 605 (5th Cir. 1999)).   The evidence presented on state habeas corpus review,

which is summarized briefly below, supports the state court's finding that Jackson's

affidavit lacks credibility and the ultimate conclusion that Barton failed to show that

the prosecution presented or relied upon perjured testimony to secure his conviction.[57]

In rejecting Barton's claim, the state habeas corpus court considered detailed

affidavits from the both of the prosecutors who represented the State at Barton's

October 2010 trial, two of the State's investigators, and Jackson's criminal defense

counsel.   According to this evidence, the State's lead investigator, Sergeant Craig

Clopton of the Harris County Sheriff's Office, approached Jackson on July 11, 2010,

while she was in custody at the Harris County Jail pending a motion to revoke the

probation that she had previously received for possession of marijuana in a drug free

zone.[58]   During a recorded interview, Jackson told Clopton that Barton convinced

McClain and Cansler to rob the Wing Zone because Barton was "mad" about being

fired.[59]   Jackson also told Clopton that Barton admitted to driving McClain and

---

[57]     Findings and Conclusions [Doc. # 57-10], at 19.

[58]     Affidavit of Craig Clopton [Doc. # 57-8], at 83, 94.

[59]     *Id.* at 94.

Cansler to commit the robbery, which netted $300 in proceeds.[60]

Clopton provided a copy of the recorded interview to the lead prosecutor, Marcy McCorvey,[61] who was assisted in the case against Barton by another prosecutor, Donna Logan.[62]  After listening to the recorded interview, McCorvey requested permission to speak with Jackson from Jackson's appointed defense counsel (E. Ross Craft), specifically informing him that there would be "no deals" in exchange for any cooperation or potential testimony against Barton.[63]  McCorvey denied threatening or coercing testimony from Jackson, noting that State had more than sufficient evidence against Barton to proceed to trial without Jackson's assistance.[64] Jackson assured McCorvey that all of her statements to Sergeant Clopton were "accurate, truthful, and voluntarily made," and that Jackson further understood that testifying against Barton was "the right thing to do."[65]

Jackson's defense counsel agreed that the State was "very clear there was to be no coercion or promises of leniency" where the pending motion to revoke probation

---

[60]     *Id.* at 94-95.

[61]     *Id.* at 95; Affidavit of Marcy McCorvey [Doc. # 57-8], at 25.

[62]     Affidavit of Donna Logan [Doc. # 57-8], at 11.

[63]     Affidavit of Marcy McCorvey [Doc. # 57-8], at 26-27.

[64]     *Id.*

[65]     *Id.*

was concerned.[66]   He added that Jackson "never expressed nor relayed any information or any indication [that] the State had made any threats/coercion" and "never indicated [that] the State forced her or tried to force her to testify to anything other than the truth."[67]

The trial transcript shows that Barton questioned Jackson at length about the veracity of her testimony, the pending criminal charges against her, and any deal she might have with the State.[68]   It was clearly difficult for Jackson to testify against Barton, her former boyfriend and the father of her new-born son, as the record reflects that she broke down in tears while he tormented her on cross-examination.[69]  Nevertheless, Jackson adamantly insisted that there had been no coercion and that the State had made no deal in exchange for her testimony, which she maintained was true.[70]

An investigator employed by the Harris County District Attorney's Office, Steven Januhowski, advised the state habeas corpus court in his affidavit that he reviewed phone conversations between Barton and two acquaintances, which were

---

[66]   Affidavit of Facts Concerning Najhi Jackson [Doc. # 57-7], at 53.

[67]   *Id.*

[68]   Court Reporter's Record, vol. 8 [Doc. # 14-20], at 80-93, 96-98, 99-108, 109-10.

[69]   *Id.* at 89, 98.

[70]   *Id.* at 63, 97-98, 104.

recorded by the Harris County Jail, and determined that Barton planned to manipulate Jackson into composing an affidavit that would undermine her trial testimony.[71] Januhowski further determined that Barton also threatened Cansler, forcing Cansler to provide an affidavit recanting his prior written statement to police about Barton's involvement in the offense, and that Barton was also attempting to solicit fellow gang members to harm McCorvey by carrying out a "home invasion" or "vehicle takeover."[72]

After considering the entire record, the state habeas corpus court found that the facts articulated in the affidavits from McCorvey, Logan, Clopton, Januhowski, and Craft were "true and credible." [73]  Based on this evidence, the state habeas corpus court further found that there was "no agreement or deal" for Jackson's testimony against Barton and that the testimony given by Jackson was "not false."[74]  Barton has not presented clear and convincing evidence that refutes the state habeas corpus court's fact findings, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1), and he does not otherwise establish that the prosecution knowingly sponsored perjured

---

[71]     Affidavit of Steven Januhowski [Doc. # 57-9], at 14-17.

[72]     *Id.* at 9-17; *see also* Letter to ADA Marcy McCorvey from inmate Keith Washington [Doc. # 57-9], at 19-22 (attached as Ex. A to the Affidavit of Steven Januhowski).

[73]     Findings and Conclusions [Doc. # 57-10], at 9.

[74]     *Id.* at 16-17.

testimony at his trial.[75]  He does not otherwise show that the state court's decision to reject his prosecutorial misconduct claim was unreasonable or wrong.  Therefore, Barton is not entitled to relief on this claim.

### E.    Actual Innocence

Finally, Barton contends that he is actually innocent of committing capital murder because his conviction was based on a "convoluted" presentation of the evidence by the prosecution to make it look like he was part of a conspiracy.[76]  Barton points to the affidavit from Nahji Jackson, purporting to retract her testimony at trial, and an affidavit from Maurquice Cansler, in which Cansler contends that Barton "did

---

[75]    Barton presents affidavits that purport to be from Nahji Jackson's mother and sister, who assert that Jackson's testimony was coerced by threats and promises of leniency from the State.  *See* Affidavit of Normandie Michelle Stroter [Doc. # 31], at 22-23; Affidavit of Michele L. Stroter [Doc. # 31], at 26-27.  Both of these affidavits, however, simply repeat the same facts set out in Nahji Jackson's affidavit, which the state habeas corpus court found to be manufactured and without credibility or evidentiary value.  When considered in light of the other evidence presented on state habeas corpus review, neither of the affidavits presented by Barton provide facts that refute those state court findings and they do not otherwise convincingly establish that Jackson's testimony, which was consistent with her initial statement to law enforcement and with other evidence presented at trial, was false.  Under these circumstances, the affidavits presented by Barton fall far short of meeting the "clear and convincing" evidentiary standard required to overcome the presumption of correctness found at 28 U.S.C. § 2254(e)(1) or this circuit's long history of viewing "recanting affidavits" with "extreme suspicion."  *Summers v. Dretke*, 431 F.3d 861, 871-72 (5th Cir. 2005) (citations omitted).

[76]    Petition [Doc. # 1], at 6.

not have anything to do with" the Wing Zone robbery or capital murder offense.[77]

Barton alleges further that the testimony against him from cooperating co-defendant

Lloyd McClain, who was the "triggerman and principal actor of the crime," was a

"lie."[78]

A claim of actual innocence, standing alone, is not a cognizable ground for

relief on federal habeas corpus review. *See Herrera v. Collins*, 506 U.S. 390, 400

(1993). Instead, a claim of actual innocence is "a gateway through which a habeas

petitioner must pass to have his otherwise [procedurally] barred constitutional claim

considered on the merits." *Id.* at 404. A petitioner seeking to surmount a procedural

default through a showing of "actual innocence" must support his allegations with

new, reliable evidence that was not presented at trial and must show that it was more

likely than not that, in light of the new evidence, no juror, acting reasonably, would

have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*,

513 U.S. 298, 326-27 (1995); *see also House v. Bell*, 547 U.S. 518 (2006) (discussing

at length the evidence presented by the petitioner in support of an actual-innocence

exception to the doctrine of procedural default under *Schlup v. Delo*).

The state habeas corpus court rejected Barton's actual-innocence claim, finding

---

[77]    *Id.*

[78]    *Id.*

that he did not present any "credible" evidence of his innocence or show that, despite the evidence that supports the conviction, "no reasonable juror could have found [him] guilty of capital murder" as charged in the indictment.[79]   Barton does not present any evidence here that would overcome the presumption of correctness that pertains to the state habeas corpus court's findings on this issue.   Likewise, Barton does not demonstrate that the state court's decision was based on an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d)(2), or show that he is otherwise entitled to relief.   In that respect, even assuming that such a claim is cognizable, the Barton falls far short of the more stringent standard of proof needed to make a stand-alone claim of actual innocence under *Herrera v. Collins*, 506 U.S. 390 (1993) in light of the overwhelming evidence against at trial.   *See House*, 547 U.S. at 555 (finding that the petitioner fell short of the "extraordinarily high" threshold showing necessary to make a claim of actual innocence under *Herrera*).   Because Barton does not establish a cognizable claim, the respondent is entitled to summary judgment on this issue.   Absent a viable claim for relief, the petition must be denied and this case will be dismissed after the Court disposes of Barton's request for discovery, appointment of counsel, and an evidentiary hearing.

---

[79]      Findings and Conclusions [Doc. # 57-10], at 18 (citing *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006) (citations omitted)).

## IV.   **PETITIONER'S MOTIONS**

Barton has filed motions requesting appointment of counsel, discovery, and an evidentiary hearing on his claim that the prosecution violated his rights by presenting perjured testimony from Nahji Jackson and his claim that he is actually innocent.[80] The state habeas corpus court addressed these claims in detail and, for reasons outlined above, Barton has not demonstrated that the decision to reject these claims was unreasonable or wrong.  Barton has not alleged facts that raise a genuine issue of material fact regarding whether he is entitled to relief on these claims, such that discovery is required.  Likewise, Barton does not attempt to show that an evidentiary hearing is available under the governing statute, 28 U.S.C. § 2254(e)(2), because he does not show that any of his claims rely upon "a factual predicate that could not have been previously discovered through the exercise of due diligence" and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  Instead, Barton is plainly seeking to relitigate claims that were adjudicated on the merits in state court, which is not

---

[80]     Motion for Appointment of Counsel, Authorization of Discovery, and [an] Evidentiary Hearing [Doc. # 54], at 1-17; Motion for Court to Consider Previously Filed Motion for Appointment of Counsel, Authorization of Discovery, and Evidentiary Hearing [Doc. # 62], at 1.

allowed under the federal habeas corpus standard of review.  *See Richter*, 562 U.S. at 102-03.

In his response to the motion for summary judgment, Barton also requests discovery and an evidentiary hearing concerning his claim that the trial court was biased against him, such that his conviction is tainted by structural error.  In support of that request, Barton references comments that are attributed to one of his former defense attorneys, Amy Martin, who reportedly ran into the trial judge at a local bar, where the judge commented that she denied Barton stand-by counsel in an effort "to pressure [Barton] to abandon the choice [to proceed *pro se*] and elect to have counsel re-appointed."[81]  Assuming that this conversation actually occurred, Barton indicates that Martin conveyed this information to Barton "before trial," which occurred in 2010, when Martin was visiting him in jail.[82]  Although Barton was aware of this information in 2010, he made no mention of it in his state habeas corpus application or supporting memorandum.[83]  Barton makes no effort to explain why he waited seven years, until 2017, to raise this claim for the first time in his response to the respondent's motion for summary judgment.  Because he fails to show that the

---

[81]     Petitioner's Response [Doc. # 66], at 11.

[82]     *Id.*

[83]     State Habeas Application Under Article 11.07 of the Texas Code of Criminal Procedure and Memorandum [Doc. # 57-5], at 3-84, and continued at [Doc. #57-6], at 1-34.

purported claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence, Barton is not entitled to an evidentiary hearing, 28 U.S.C. § 2254(e)(2), and there is no basis to authorize discovery. In that regard, to the extent that the comments attributed to Martin relate to an adverse ruling by the trial court in Barton's case, the comments do not establish judicial bias because they do not evince animus against Barton, only a preference that he proceed with representation of counsel during his capital murder trial. Such comments, which stem from "ordinary efforts at court administration," do not support a bias or partiality challenge. *Liteky*, 510 U.S. at 555-56.

Barton, who has capably litigated this case on his own throughout this proceeding, does not otherwise show that the appointment of counsel is necessary. Accordingly, his motions for appointment of counsel, discovery, and an evidentiary hearing will be denied.

## V.   **CERTIFICATE OF APPEALABILITY**

Rule 11 of the Rules Governing Section 2254 Cases now requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not debate whether the petition could be resolved in a different manner.  Accordingly, a certificate of appealability will not issue in this case.

## VI.   <u>CONCLUSION AND ORDER</u>

Accordingly, the Court **ORDERS** as follows:

1.   Petitioner Bradley Jared Barton's motions to consider briefing submitted previously [Doc. # 65] and supplemental briefing [Doc. # 67] are **GRANTED**.

2.   Barton's motions for appointment of counsel, discovery, and an

33

evidentiary hearing [Docs. # 54, # 62] are **DENIED**.

3.     The respondent's motion for summary judgment [Doc. # 58] is **GRANTED** and this case is **DISMISSED with prejudice**.

4.     A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on August 10, 2017.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE